UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ADAM MAURICE HUNNICUTT,          )
                                 )
          Petitioner,            )     Nos.   1:10-CR-110-CLC-CCS
                                 )            1:14-CV-154-CLC
v.                               )
                                 )
UNITED STATES OF AMERICA,        )
                                 )
          Respondent.            )

## MEMORANDUM OPINION

This matter comes before the Court on the motion of *pro se* petitioner Adam M.
Hunnicutt ("Petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255
[Doc. 503] ("Petition").[1]  Petitioner filed a Memorandum [Doc. 508] in support of his Petition
and included his Affidavit[2] [Doc. 508, pp.31-35] and several exhibits with his Memorandum.
The Government has responded [Doc. 532] in opposition.  Petitioner has filed a Reply [Doc.
537].  After reviewing the arguments of the parties, the exhibits presented by the Petitioner, the
entirety of the record, and the relevant case law, the Court determines that the Defendant's
request to vacate, set aside, or correct his sentence must be **DENIED**.

---

[1] In accordance with Rule 4(b) of the Rules Governing Section 2255 Proceedings ("Section 2255
Rules"), the Court has considered all of the pleadings and filings in Petitioner's § 2255 motion.
The Court has also considered all the files, records, transcripts, and correspondence relating to
Petitioner's conviction in criminal Case No. 1:10-CR-110-CLC-CCS.  All citations to the record
are to the docket in Case No. 1:10-CR-110-CLC-CCS.

[2] The undersigned has ruled [Doc. 533] that, although the "Affidavit" attached to the Petitioner's
Memorandum was not duly sworn before an authorized individual or notorized, the Court will
consider it as an unsworn declaration under penalty of perjury, pursuant to 28 U.S.C. § 1746.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Following his release from prison in 2007 for a federal felony conviction, Petitioner manufactured and distributed methamphetamine and conspired with others to do the same in the Eastern District of Tennessee.  [Doc. 373, Amended Factual Basis, p.2]  During this time, Petitioner also supplied materials, equipment, and the locations for Brian Tittle to cook approximately one hundred sixty (160) grams of methamphetamine.  [Doc. 373, p.2]  Petitioner himself cooked between 280 and 560 grams of methamphetamine in a one-month period.  [Doc. 373, p.2]  Additionally, Petitioner purchased products used in manufacturing methamphetamine, and, according to the Tennessee Methamphetamine Task Force, Petitioner personally purchased 246.72 grams of pseudoephedrine between October 2008 and August 2010.  [Doc. 373, p.2]  According to the Agreed Factual Basis, this amount of pseudoephedrine would yield approximately one hundred twenty-three (123) grams of actual methamphetamine.  [Doc. 373, p.2]

On November 29, 2011, Petitioner entered a plea of guilty before United States Magistrate Judge William B. Mitchell Carter to conspiracy to manufacture and distribute fifty (50) grams or more of actual methamphetamine and five hundred (500) grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One).  [Docs. 390 & 392]  Petitioner also entered a plea of guilty to conspiracy to possess and distribute pseudoephedrine and other chemicals used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2) and 846 (Count Two).  [Docs. 390 & 392]  The parties did not enter into a written plea agreement but agreed to an Amended Factual Basis [Doc. 373], and the Government dismissed two additional substantive counts charging Petitioner.  The Magistrate Judge recommended [Doc. 392] that the Petitioner's guilty pleas be

accepted.  On December 19, 2011, the undersigned accepted Petitioner's pleas of guilty.  [Doc. 397]

On June 21, 2012, the Court conducted a sentencing hearing for Petitioner.  [Doc. 452] Petitioner's Presentence Report calculated his guidelines range as 121 to 151 months of imprisonment.  [Doc. 464, Sentencing Hrg. Transcript, p.4]  However, a statutory mandatory minimum of 240 months applied in Petitioner's case and, thus, the Court sentenced Petitioner to 240 months of imprisonment.  [Doc. 464, pp.4–5, 8]  The Judgment of conviction [Doc. 458] was entered on June 29, 2012.  Petitioner was represented by Attorney Aldous McCrory ("Counsel") through the entry of Judgment in this case.

Petitioner filed a *pro se* notice [Doc. 457] of direct appeal, and the Court of Appeals for the Sixth Circuit appointed [Docs. 469 & 471] Attorney C. Eugene Shiles ("Appellate Counsel") to represent Petitioner in his direct appeal.  Appellate Counsel moved to withdraw, filing an *Anders*[3] brief stating that, after examining the record, he discerned no non-frivolous grounds for appeal.  [See Doc. 481, Order, p.3]  Petitioner filed a *pro se* brief, arguing that (1) "trial counsel promised to challenge the drug quantity at sentencing but did not do so, resulting in a sentence that was higher than [Petitioner] expected" and (2) "the district court failed to properly inquire into whether [Petitioner's] medications rendered him unable to enter a voluntary plea."  [Doc. 481, p.3]  The appellate court decided both of these issues against Petitioner and affirmed the Judgment.  [Doc. 481, p.5]

Petitioner now contends that his guilty plea was not knowingly and voluntarily made, that his conviction and sentence are based upon erroneous facts, and that he received the ineffective assistance of both trial and appellate counsel.

---

[3] *Anders v. California*, 386 U.S. 738, 744 (1967).

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence to vacate, correct, or set aside that sentence, on the grounds that

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).

To obtain relief pursuant to 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). With these principles in mind, the Court turns to the Petitioner's claims.

## III.    DISCUSSION

Petitioner asserts three errors:  (1) That his guilty plea was not knowing and voluntary, because he was under the influence of prescribed medication at his rearraignment hearing;[4] (2) that his conviction and sentence are based upon erroneous facts,[5] and (3) that he received the ineffective assistance of trial and appellate counsel.[6]  The Court will consider each of these allegations in turn.

### A.  Voluntariness of Guilty Plea

Petitioner contends that his "plea was not knowing and voluntary, because [he] was medicated."  [Doc. 503, p.5]  He claims he was "under the influence of Elavil/Welbutran [sic], both psychotropic drugs, when [he] pled."  [Doc. 503, p.5]  He also states that while he raised this issue on direct appeal by "provid[ing] the [appellate] court a *pro se* supplement – [it] did not hear the issue." [Doc. 503, p.6 (emphasis omitted); *see also* Doc. 508, p.7]   In Petitioner's memorandum in support of his motion, he states further that "[d]uring the plea colloquy, the Court inquired if Petitioner was on medication at the time.  Petitioner answered yes.  The inquiry stopped there."  [Doc. 508, p.24]

The Court finds this issue to be without merit.  The issue was decided on direct appeal, and the magistrate judge conducted a thorough inquiry with regard to the Petitioner's medication.  Petitioner's contentions to the contrary are both patently untrue.

---

[4] This is Petitioner's Ground Two in his Petition [Doc. 503, p.5].

[5] This is Petitioner's Ground One in his Petition [Doc. 503, p.4].

[6] This allegation is contained in Petitioner's Grounds Three and Four in his Petition.  [Doc. 503, pp.7–8]

First, the Court agrees with the Government that whether the Petitioner's medication affected the voluntariness of his guilty plea was decided on appeal. This is set out fully in the Government's response:

> The petitioner raised this issue in his appeal to the Sixth Circuit, when he argued, '[The Petitioner] was not in a position to accept his guilty plea . . . because he was heavily medicated.' (Sixth Circuit Case No. 12-5778, Def. *pro se* Brief at 6, filed March 28, 2013.) Though the petitioner claims otherwise, the Sixth Circuit did consider this issue:
>
>> [The petitioner] also argues that the district court failed to properly inquire into the effects of the medications that he was taking at the time of the plea hearing. But the district court asked the "critical question"—whether the drugs impaired [the petitioner]'s ability to understand the proceedings—and both [the petitioner] and his counsel replied that they did not. *United States v. Winnick*, 490 F. App'x 718, 720 (6th Cir. 2012) (quoting *United States v. Savinon-Acosta*, 232 F.3d 265, 268 (1st Cir. 2000)). Further, there is no indication that [the petitioner] had a history of mental illness, and his behavior during the plea colloquy supported his "assurances of competency." *Id.* Under these circumstances, the district court was not obligated to conduct a more searching inquiry into [the petitioner]'s competence to plead guilty. *See id.* Finally, the district court otherwise complied with the requirements of Rule 11 and ensured that [the petitioner]'s guilty plea was knowing, voluntary, and intelligent. *See United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005).
>
> (R. 481, Sixth Circuit Case No. 12-5778, Order at PageID# 1809, filed May 5, 2013.) The Sixth Circuit issued a mandate three weeks later. (R. 482, Sixth Circuit Case No. 12-5778, Mandate at PageID# 1812, filed June 6, 2013.) Thus, the Sixth Circuit has adjudicated the voluntariness of the petitioner's guilty plea against the petitioner, and that holding is the law of the case. "Under the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation." *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (additional citations

omitted)); *see also Davis v. United States*, 417 U.S. 333, 342 (1974).

[Doc. 532, pp. 10-11]  Accordingly, the Sixth Circuit specifically found the District Court had "ensured that Hunnicutt's guilty plea was knowing, voluntary, and intelligent" and that this issue did "not warrant relief on direct appeal."  [Doc. 481, pp. 4–5]

Furthermore, the Court's own examination of the record only confirms the Court of Appeals' ruling.  When Petitioner advised the magistrate judge that he was on medication, not only did the inquiry not stop there, but rather an in-depth inquiry was made:

> THE COURT:  All right, sir.  Are you presently under the influence of any drug or medication or alcoholic beverage, anything like that, that would affect your ability to understand?
>
> THE DEFENDANT:  I'm on medication at the county jail for—
>
> THE COURT:  All right.  Well, let's talk about that.  You're on some medication at the jail?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  All right.  About how long have you been on that medication?
>
> THE DEFENDANT:  Six months.
>
> THE COURT:  All right.  And that medication is medication for what purpose, generally?
>
> THE DEFENDANT:  Depression and anxiety.
>
> THE COURT:  All right, sir.  Now, during that period you've been regularly taking this medication.  Is that correct?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  All right.  While you're taking that medication, as you now are, in the normal dose, are you able to understand what's going on around you?
>
> THE DEFENDANT:  Yes, Your Honor.

THE COURT:  It's not affecting your ability to understand?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Mr. McCrory, do you consider your client competent to enter a plea here today?

MR. McCRORY:  Yes, Your Honor.

THE COURT:  And you do feel like you understand what's going on here today, Mr. Hunnicutt?  Is that right?

THE DEFENDANT:  Yes, Your Honor.

[Doc. 463, Transcript of Rearraignment, pp.6–8]  Accordingly, the District Court properly and fully inquired as to the effects of any medication, and the Petitioner (and his attorney) confirmed that the medication did not affect his ability to understand and that he did understand.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  *United States v. McElroy*, 362 F. App'x 497, 500 (6th Cir. 2010) (quoting *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985))).  For a guilty plea to be voluntary and intelligent, the accused must have "a full understanding of what the plea connotes and of its consequence."  *Boykin v. Alabama*, 395 U.S. 238, 244 (1969).  In the instant case, the facts belie Petitioner's claims, as his plea was made knowingly, voluntarily, and intelligently; the District Court did make a proper inquiry; the Sixth Circuit did adjudicate this claim; and Petitioner may not now relitigate the same.  Even if Petitioner could relitigate his claim, the Court would deny him relief based on the above facts.

## B. Validity of Conviction and Sentence

In his motion, Petitioner challenges the validity of his sentence, arguing "my drug quantity determination was incorrect because the drug purity was not properly considered[.]" [Doc. 503, p.4]  In Petitioner's memorandum, he argues at great length that the pseudoephedrine quantity attributed to him was incorrect for various reasons [Doc. 508, p.16]; that his calculations, based on his own allegations of fact and utilization of the lowest "purity rates," result in the quantities attributed to him to be less than the Government claims [Doc. 508, pp.8, 13–19], and that a handwriting expert would have further lowered the drug quantity attributed to him [Doc. 508, pp.8, 18–19].  In his reply brief, Petitioner attacks his conviction for conspiring to manufacture and distribute fifty (50) grams or more of methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A) and § 846.  He contends, based upon his own calculations, that the alleged drug quantity could be below the quantity proscribed by 21 U.S.C. § 841(b)(1)(A) and, instead, would fall under 21 U.S.C. § 841(b)(1)(B), resulting in a lesser mandatory minimum sentence. [Doc. 537, p.6]  He asserts he is "actually innocent" of the drug quantity necessary for a § 841(b)(1)(A) conviction and can only be convicted of a § 841(b)(1)(B) offense, which would trigger a mandatory minimum sentence of ten years.  [Doc. 537, p.7]  Thus, Petitioner challenges the validity of both his conviction and his sentence, based upon his factual assertions with regard to the drug quantity that can be derived from his personal pseudoephedrine purchases.[7]

Except for the rare circumstance when a claimant can show fundamental unfairness, claims involving neither jurisdictional nor constitutional errors must be raised on direct appeal and cannot be addressed on collateral review.  *Grant v. United States*, 72 F.3d 5033, 506 (6th

---

[7] The Court considers Petitioner's allegation that he would not have entered a guilty plea if counsel had informed him that his drug quantity was actually lower than fifty grams in part C below.

Cir.), *cert. denied*, 517 U.S. 1200 (1996). Petitioner's allegations that his conviction and sentence are invalid fail to raise issues that are justiciable in a § 2255 proceeding for three primary reasons: First, Petitioner's sentence was controlled by his plea to §§ 841(a)(1), 841(b)(1)(A), and 846. Petitioner entered a valid guilty plea to Count 1, which charged him with manufacturing and distributing more than fifty grams of methamphetamine, a violation of § 841(a)(1) and –(b)(1)(A). Petitioner received the mandatory minimum sentence for that offense. Second, Petitioner has already raised this challenge to his sentence on direct appeal. The Sixth Circuit has affirmed both the voluntariness of his guilty plea and the validity of his sentence. Third, even if the Court could reach the facts behind Petitioner's conviction for conspiracy to manufacture and distribute methamphetamine, Petitioner's factual assertions are simply wrong. The Amended Factual Basis, with which Petitioner agreed, states he was personally responsible for well in excess of fifty grams of actual methamphetamine, without even considering his personal pseudoephedrine purchases. The Court examines each of these reasons in depth below.

First, as the Government notes in its response, the Grand Jury indicted Petitioner (and other defendants) with conspiracy to manufacture and distribute fifty (50) grams or more of methamphetamine (actual) or five hundred (500) grams or more of a mixture containing a detectible amount of methamphetamine in violation of 21 U.S.C. § 846, 841(a)(1), and 841(b)(1)(A).[8] [Doc. 532, p.2] Thus, Petitioner knew he was charged with a § 841(b)(1)(A) offense and the fifty (50) gram drug quantity threshold and not a § 841(b)(1)(B) offense.

_____

[8] Petitioner was also indicted in Count 2 for conspiring to possess and distribute list chemicals knowing the chemicals would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 846 and § 841(c)(2), which count was included in his plea and sentencing, and two substantive counts of manufacturing methamphetamine, which were dismissed. Petitioner does not raise any issues with regard to his guilty plea to Count 2.

The Government filed a Factual Basis on October 11, 2011 [Doc. 367] and an Amended Factual Basis on October 21, 2011 [Doc. 373][9] summarizing its evidence, including fact witnesses to Petitioner's involvement in manufacturing and distributing far more than fifty grams of methamphetamine, his own personal purchases of 246.72 grams of pseudoephedrine, and an expert witness who would "testify that this amount of pseudoephedrine would conservatively yield approximately 123 grams of methamphetamine (actual)."[10]  [Doc. 373, p.2]  This Amended Factual Basis [Doc. 373] and the essential elements the Government would be required to prove at trial were discussed with Petitioner at the rearraignment hearing [Doc. 463, p.14].   The Amended Factual Basis was provided to the Petitioner.   Moreover, the prosecutor explained that the conspiracy "involved more than 50 grams of methamphetamine (actual) or 500 grams or more of a mixture or substance containing methamphetamine."  [Doc. 463, p.15]

At Petitioner's rearraignment hearing, the Government specifically explained at the outset that Petitioner was agreeing and pleading to Counts 1 and 2 and that "Count 1 charges the Defendant with conspiracy to manufacture and distribute 50 grams or more of methamphetamine (actual) or 500 grams of a mixture or substance containing a detectable amount of methamphetamine . . . ."  [Doc. 463, p.4]  The Government stated that "with regard to punishments, for Count 1, because the Defendant has at least one prior felony drug conviction, he faces imprisonment for a mandatory minimum of 20 years in jail and a maximum term of life

---

[9] The only difference between the two documents was that the penalties for Count 2 were left out of the initial Factual Basis.  [*See* Doc. 532, p.2, n.5]

[10] This amount utilizes a fifty percent conversion factor.  However, considering only Petitioner's individual purchases of pseudoephedrine and using a twenty-five percent conversion factor puts Petitioner over fifty (50) grams as well.

. . . ." [Doc. 463, p.4][11]  Thus, Petitioner was advised and knew exactly the offense to which he was pleading and its potential punishment.

In questioning the Petitioner at the rearraignment hearing, the Court ascertained and the Petitioner admitted he had read Counts 1 and 2 of the Indictment, that these were the counts to which he would be pleading guilty, and that the other counts were going to be dismissed [Doc. 463, p.8]; that he had sufficiently discussed the case with his lawyer and was satisfied with his representation [Doc. 463, p.8]; that he was proposing to enter a guilty plea to Counts 1 and 2, which counts he had read and reviewed with his attorney [Doc. 463, p.8]; that he and his lawyer had discussed his right to a trial and the possible benefits of entering into a plea rather than having a jury trial [Doc. 463, p.8-9]; and that he and his lawyer had discussed those options and that, as between those alternatives, it was his free decision to enter into this plea agreement by pleading guilty to these two counts.  [Doc. 463, p.9].    The entirety of Count 1 was read to the Petitioner and he pled guilty to Count 1, as well as to Count 2.  [Doc. 463, p.13]  Then, the prosecutor referred to and specifically explained to Petitioner the elements and the Amended Factual Basis [*See* Doc. 373], including the drug quantity of fifty grams (actual) or five hundred grams (mixture) [Doc. 463, pp.14-15], following which Petitioner acknowledged that he understood that was what he was pleading guilty to.  [Doc. 463, p.16]

The Court then again specifically discussed the Factual Basis further, noting "these are the facts the government contends it can prove to the satisfaction of a jury beyond a reasonable doubt.  And there is that document 373, filed in this case, an Amended Factual Basis, that sets out the facts on pages 1 and 2 of that document."  [Doc. 463, p.19]  Petitioner's attorney then stated he had reviewed the factual basis, as set out in the Amended Factual Basis, with Petitioner

---

[11] Petitioner concedes that his prior felony drug conviction qualifies as a predicate offense.  [Doc. 508, p.9 n.1]

[Doc. 463, p.19] and Petitioner had no disagreement with the facts [Doc. 463, p.20]. Petitioner himself then acknowledged he had reviewed the factual basis with his lawyer [Doc. 463, p.21]. Petitioner then specifically acknowledged he had no disagreement with the Government's summary of what he did as contained in the Amended Factual Basis [Doc 463, p.21]. He then acknowledged he was offering to plead guilty because he was in fact guilty [Doc. 463, p.21].[12]

Accordingly, Petitioner was informed both orally and in written form that the facts to which he was pleading guilty were those included in the Amended Factual Basis, which included a drug quantity of 123 grams of methamphetamine (actual), well above the fifty-gram threshold for a 21 U.S.C. § 841(b)(1)(A) conviction and sentence. Petitioner was provided the Factual Basis and the Amended Factual Basis, which stated the above drug quantity, and he acknowledged discussing it with his attorney, was advised of it several times during the rearraignment, and acknowledged he understood the elements and facts (including the drug quantity) and had no disagreement with these facts (including drug quantity) or the Government's summary of what he did as contained in the factual basis. Petitioner acknowledged he understood that was what he was pleading to, that he freely chose to enter into the plea agreement rather than going to trial, and that he was pleading guilty because he was guilty.

Additionally, this same issue regarding drug quantity was raised in Petitioner's direct appeal, which the Court of Appeals denied, noting:

> Hunnicutt has filed a *pro se* response, arguing that his guilty plea is invalid because: 1) trial counsel promised to challenge the drug quantity at sentencing but did not do so, resulting in a sentence that was higher than Hunnicutt expected . . . .

---

[12] As the Government further notes, Petitioner's counsel withdrew his initial objection to the drug quantity, and Petitioner said nothing. Also, in Petitioner's allocution, he stated nothing about drug quantity. [Doc. 464]

. . . .

      Hunnicutt claims that counsel promised to challenge the drug quantity calculation at sentencing, thus reducing Hunnicutt's sentencing exposure, and that he entered his plea in reliance on this promise. But when Hunnicutt entered his guilty plea, he was informed by the district court that the offense to which he was pleading guilty carried a statutorily mandated minimum sentence of twenty years and a maximum sentence of life. This information was also included in the factual basis filed by the government. Hunnicutt agreed that the offense involved more than fifty grams of methamphetamine, thus triggering the statutory mandatory minimum, and he is bound by those statements. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999).

[Doc. 481, p.3][13] Moreover, the Court of Appeals held that no basis, including the drug quantity, existed to challenge the validity of his sentence, because his sentence was triggered by the offense to which he pled guilty:

      There is also no arguable basis on which to challenge Hunnicutt's sentence. A challenge to the reasonableness of Hunnicutt's sentence is foreclosed because the district court imposed the minimum sentence required by statute. *See United States v. Cecil*, 615 F.3d 678, 695 (6th Cir. 2010). The exclusive means by which a district court may sentence a defendant below a statutory mandatory minimum are set forth in 18 U.S.C. §§ 3553(e) and 3553(f), *see United States v. McIntosh*, 484 F.3d 832, 835 (6th Cir. 2007), and neither applies here. Accordingly, the district court could not have imposed a lower sentence. Any challenge to the drug quantity that triggered the mandatory minimum sentence would have been unavailing in light of Hunnicutt's guilty plea. *See, e.g., United States v. Daniel*, 275 F. App'x 485, 486–87 (6th Cir. 2008).

---

[13] The Court of Appeals expressly held that it was not addressing the effectiveness of Petitioner's counsel, because the record was not sufficiently developed to allow it to review such a claim. [Doc. 481, p.4] Instead, the appellate court said that a claim of ineffective assistance of counsel would be more properly raised in a motion pursuant to § 2255 [Doc. 481, p.4], which the Petitioner has done here. Petitioner's claim that he received the ineffective assistance of counsel is discussed in part C below.

[Doc. 481, p.4]  Thus, the validity of Petitioner's conviction and sentence were addressed and affirmed on appeal, in light of his allegations of the incorrect drug quantity.  The Petitioner may not relitigate this issue in a collateral attack on his conviction and sentence.

Finally, even assuming for the sake of argument Petitioner is correct that the amount of actual methamphetamine properly attributable to him based only on his own pseudoephedrine purchases would be below fifty grams using the lowest conversion rate he advocates, the Amended Factual Basis still alleges, and the Petitioner still agreed, that he conspired to manufacture over fifty grams of actual methamphetamine.   In addition to his personal pseudoephedrine purchases, the Amended Factual Basis states that Petitioner "supplied materials, equipment, and locations necessary for another individual, Brian Tittle, to cook methamphetamine, which resulted in yields of approximately 20 grams per week for approximately two months."  [Doc. 373, p.2]  Multiplying twenty grams by eight weeks yields 160 grams of actual methamphetamine that is directly attributable to Petitioner's participation in the conspiracy.  Additionally, the Amended Factual Basis states that "[o]ne individual was with [Petitioner] for over a month during which [Petitioner] manufactured methamphetamine on a daily basis with yields of 10 to 20 grams per day."  [Doc. 373, p.2]  Thus, using the lower range of ten grams and a twenty-eight-day month, Petitioner himself is alleged to have cooked 280 grams of actual methamphetamine.  This is a total of 440 grams of methamphetamine,[14] which, as discussed above, Petitioner agreed is attributable to him by agreeing to the Amended Factual

---

[14] Petitioner contends that the amounts of actual methamphetamine to which the Government's witnesses would have testified are a "paper tiger," [Doc. 508, p.21-22] because the credibility and accuracy of these witnesses could have been challenged at trial.  However, Petitioner knew about these witnesses and their expected testimony, knew he could challenge these witnesses if he went to trial, and gave up that option by choosing to enter a guilty plea.

Basis.[15]    Thus, even if Petitioner's counsel could have proven that the amount of methamphetamine *estimated from the pseudoephedrine purchases* was less than fifty grams, the total amount of actual methamphetamine for which Petitioner was personally responsible was more than fifty grams (in fact, more than eight times fifty grams) by itself.  For this additional reason, the Court finds the Petitioner's allegation that he is actually innocent of a § 841(b)(1)(A) offense to be without merit.

### C. Effectiveness of Counsel

Petitioner claims he received the ineffective assistance of counsel because trial counsel failed to investigate and challenge the drug quantity attributed to him.  He argues he would not have entered into a guilty plea to Count 1 of the Indictment and would have insisted on going to trial if he had known that counsel would not challenge his drug quantity at his sentencing hearing and/or on appeal.  He also contends he received the ineffective assistance of counsel on appeal because his appellate counsel filed an *Anders* brief and failed to present his legitimate issues to the appellate court.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Moreover, a defendant is entitled to the effective assistance of counsel before deciding whether to enter into a guilty plea. *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).  A petitioner

---

[15] The Court does not take the Petitioner to be challenging the purity of these amounts of actual methamphetamine, only the methamphetamine estimate from his personal pseudoephedrine purchases.  However, even plugging in Petitioner's lower purity rate of twenty-five percent to the 440 grams of actual methamphetamine, Petitioner would still be responsible for 110 grams, more than twice the fifty-gram threshold necessary for § 841(b)(1)(A) to apply.

alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987); *see also Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003) A reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy." *Strickland*, 466 U.S. at 689 (internal citation omitted).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A petitioner who entered a guilty plea must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove he sustained prejudice, the court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

In this case, Petitioner alleges Counsel failed to challenge the drug quantity attributed to him with regard to the pseudoephedrine purchases alleged to be his in the Tennessee Methamphetamine Task Force ("TMTF") report. He argues Counsel had a duty to contest the drug quantity and he told Counsel that many of the entries in the TMTF report had incomplete serial numbers, were impossible because they occurred in different locations at the same time, or were forged during a time that he had lost his identification. He also faults Counsel for failing to obtain a handwriting expert in order to prove that some of the TMTF report entries were forged. He contends the drug quantity determination "played a large part in his considerations with respect to accepting a plea or, alternatively," going to trial. [Doc. 508, p.8] He also alleges that he agreed to the Amended Factual Basis only after Counsel gave him "incorrect advice" on the Government's alternative proof of drug quantity through its witnesses and cooperating codefendants. [Doc. 508, p.22] In his reply brief, Petitioner alleges that because Counsel failed to advocate for the correct drug quantity, he was deprived of his right to counsel, his right to due process, and his right to a trial, at which he would have had a "good chance" of being convicted of conspiring to distribute less than five grams of methamphetamine under § 841(b)(1)(B). [Doc. 537, p. 6] Petitioner also contends his guilty plea was influenced by Counsel's erroneous advice that he could challenge his drug quantity at his sentencing hearing and on direct appeal.

The Government argues Petitioner was not prejudiced by Counsel's conduct. [Doc. 532, p. 17] It maintains that while Petitioner did stipulate to a drug quantity at the rearraignment hearing, his sentence would have been the same regardless of this drug quantity, because his sentence was mandated by law. Thus, the Government contends Petitioner would have received the same sentence regardless of what his attorney did with regard to the drug quantity. It also

maintains Petitioner's assertion that he would not have pled guilty had he known he could not challenge his drug quantity later is not borne out by the record.

The Court agrees with the Government's analysis. First, as discussed at length in part B above, Petitioner had sufficient actual methamphetamine attributable to him ***without regard to the TMTF report*** to support a conviction for conspiracy to manufacture and distribute more than fifty grams of methamphetamine. Although Petitioner downplays the strength of the Government's evidence, i.e., the testimony of witnesses and cooperating codefendants, Petitioner knew about these witnesses at the time he was considering whether to enter a plea. Counsel's notes regarding a telephone call with the prosecutor on October 5, 2011 [Doc. 508, pp. 37–38], support this finding. These notes reveal that the prosecutor disclosed to Counsel that he had witnesses who would testify about Petitioner manufacturing methamphetamine in hotel rooms and four witnesses who would testify that they gave pills to Petitioner. In his notes, Counsel states that, in light of his conversation with the prosecutor, he would talk to Petitioner about whether he wants to go to trial or enter a plea, once Counsel received additional information from the prosecutor about whether the Government would pursue a gun enhancement and an endangerment enhancement. Thus, the Court finds Petitioner's mandatory minimum sentence was controlled by his knowing and voluntary plea to Count 1, a plea that was supported by a sufficient factual basis, without regard to the amount of methamphetamine estimated from the TMTF report entries for Petitioner. Petitioner suffered no prejudice from Counsel's action or inaction with regard to the drug quantity estimated from the TMTF report or from Counsel's alleged advice that Petitioner could challenge drug quantity at sentencing or on appeal. Petitioner has not shown he would not have entered a guilty plea but for Counsel's actions with regard to the TMTF report.

The Court also questions the accuracy of Petitioner's claim that Counsel told him he could challenge the drug quantity at sentencing and on appeal. As discussed at length above, Petitioner was informed at the rearraignment hearing [Doc. 463, pp.4, 13, 15], that he was pleading to conspiring to manufacture and distribute more than fifty grams of methamphetamine and that, due to his prior felony conviction, a mandatory minimum sentence of 240 months applied in his case. Petitioner did not object to the fact that the drug quantity exceeded fifty grams or to the imposition of the mandatory minimum sentence. Also, at the sentencing hearing, Petitioner did not object when Counsel stated,

> Your honor, initially we had an objection to the drug quantity amounts that were relied on based on the methamphetamine task force; but given the fact that [Petitioner] is facing a mandatory minimum in this case, we don't believe that those concerns would have any impact on the sentence that the Court has to consider. So we will withdraw that concern.

[Doc. 464, p.3] The Court subsequently informed Petitioner that its discretion under the sentencing guidelines did not apply in this case because it was bound to impose a mandatory minimum sentence of 240 months, which is higher than Petitioner's guideline range. [Doc. 464, p.5] Petitioner did not question the drug quantity or the imposition of the mandatory minimum sentence in his allocution at the sentencing hearing. [Doc. 464, p.6] Thus, Petitioner's contention that he and counsel planned to challenge his drug quantity at sentencing does not ring true.[16]

The exhibits filed by Petitioner show Counsel considered Petitioner's allegations with regard to the TMTF report [Doc. 508, pp. 39, 41], discussed how the drug quantity would be

---

[16] Petitioner's false assertions that he was not questioned about his medication at his rearraigment hearing and that the Sixth Circuit did not address his issues on his direct appeal further weaken his credibility with regard to his claim that Counsel told him he could challenge the drug quantity at sentencing and on direct appeal.

derived with the prosecutor [Doc. 508, pp.37–38], filed an objection (which was later withdrawn) to the drug quantity amounts derived from the TMTF report [Doc. 508, p. 39], researched the case law with regard to estimating drug quantity [Doc. 508, p.41], and concluded the Petitioner's argument with regard to the drug quantity estimated from the TMTF report was "moot when the government informed [him] of their intention of pursuing a drug quantity based on statements by co-conspirators as well as a sentencing enhancement based on the activities occurring in a hotel room thereby presenting a danger to the public" [Doc. 508, February 9, 2013 letter from Counsel to Appellate Counsel, p.41].[17]  The Court finds that the Petitioner has not shown Counsel to have been deficient, in that Petitioner has not overcome the presumption that Counsel's actions were "sound . . . strategy."  *See Strickland*, 466 U.S. at 689 (internal citation omitted).  Additionally, Petitioner has not shown he was prejudiced by Counsel's actions, because his mandatory minimum sentence was imposed as a result of the offense to which he knowingly and voluntarily pleaded guilty.

Finally, Petitioner summarily argues he received the ineffective assistance of Appellate Counsel because Appellate Counsel filed an *Anders* brief.  [Doc. 503, p. 8]  He argues that Appellate Counsel's failure to brief Petitioner's legitimate appellate issues properly "gave away" his direct appeal and required him to make the same arguments in this post-conviction motion, which carries a higher burden.  The Court finds this allegation also fails both prongs of the *Strickland* test.

In *Anders*, the Supreme Court held that counsel must support a client's direct appeal "to the best of his ability"; however, if counsel determines there are no non-frivolous issues to raise on appeal, he or she must inform the court and request permission to withdraw:

---

[17]The Court notes that Petitioner did not include the second page of this letter, on which it appears Counsel elaborated on his opinion that Petitioner's arguments regarding drug quantity, as derived from the TMTF report, were moot.

> Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.

386 U.S. at 744. The appellate court "—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Id.* That is exactly what occurred in this case, and the Court of Appeals held that "counsel has filed an adequate *Anders* brief, the issues raised in [Petitioner's] pro se response do not warrant relief on direct appeal, and our independent review of the record reveals no other arguable issues." [Doc. 481, p.5] Accordingly, the Court finds that Appellate Counsel was not deficient because he filed an adequate *Anders* brief as required. The Court also finds Petitioner was not prejudiced because he was allowed to file a *pro se* brief raising his issues; the Court of Appeals addressed those issues and found them to be meritless, reserving only the issue of the effectiveness of trial counsel, which the Petitioner has litigated herein; and the Court of Appeals reviewed the entire record and found no other issues to be raised. Petitioner does not allege his issues were not considered on direct appeal, just that they were not raised effectively. The Court finds Petitioner's claim that he did not receive the effective assistance of counsel on direct appeal lacks merit.

The Court finds Petitioner has failed to carry his burden of showing Counsel or Appellate Counsel were deficient or that he was prejudiced by their actions.

## IV.    CONCLUSION

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED**.

The Court must now consider issues that may arise if Petitioner files a notice of appeal. Section 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion. Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability. No § 2255 petitioner may appeal without this certificate. District judges may issue certificates of appealability under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which codifies the standard for issuing a certificate of probable cause originally articulated in *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983). *See Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997). "A certificate of probable cause requires petitioner to make a 'substantial showing of the denial of [a] federal right.'" *Barefoot*, 463 U.S. at 893. *See also* 28 U.S.C. § 2253(c)(2). The standard is perhaps best phrased as follows:

> In requiring a "question of some substance," or a "substantial showing of the denial of [a] federal right," obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are "adequate to deserve encouragement to proceed further."

*Gordon v. Willis*, 516 F.Supp. 911, 913 (N.D. Ga. 1980) (quoting *United States ex rel. Jones v. Richmond*, 245 F.2d 234 (2d Cir.), *cert. denied*, 355 U.S. 846 (1957)).

In this case, Petitioner's claims are clearly without merit, and he cannot present a question of some substance about which reasonable jurists could differ. The Court will therefore **DENY** a certificate of appealability.

Rule 24(a) of the Federal Rules of Appellate Procedure further requires the district court to certify in writing whether an appeal would be taken in good faith. For the same reasons that the Court will deny a certificate of appealability, the Court determines any appeal in this case

would not be taken in good faith.  It will therefore be **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by Petitioner is not taken in good faith, and he may not proceed on appeal *in forma pauperis*. *United States v. Atkins*, 171 F.Supp.2d 769 (W.D. Tenn. 2001).  No certificate of appealability will issue as Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c).

       **AN APPROPRIATE ORDER WILL ENTER.**


                **/s/**_____
                **CURTIS L. COLLIER**
                **UNITED STATES DISTRICT JUDGE**